| | | |
|---|---|---|
| LIBERTY UHACK AND JOSEPH JORDAIN | * | NO. 2024-CA-0407 |
| | * | COURT OF APPEAL |
| VERSUS | | |
| | * | FOURTH CIRCUIT |
| LOWE'S HOME CENTERS, INC., NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, PATRICK GARNER, NAKIA JAMES, UNITED SERVICES AUTOMOBILE ASSOCIATION AND ABC INSURANCE COMPANY | * | STATE OF LOUISIANA |
| | * | |
| | * | |
| | * * * * * * * | |

*RLB*

**BELSOME, C.J., DISSENTS AND ASSIGNS REASONS**

I respectfully dissent from the majority.

The issue before the trial court was whether there is a genuine issue of material fact as to Reserve Deputy Patrick Garner's ("Off. Garner") employment relationship with Lowe's. Off. Garner was working security detail at the Lowe's on Elysian Fields Avenue the night of the incident. After suspecting Nakia James of shop lifting, Off. Garner made the decision to pursue her off-site. An automobile chase ensued, ending with a crash that injured innocent bystander Liberty Uhack ("Uhack"). If Lowe's indeed exercised control over Off. Garner as an employee, then they owed a duty of care to Ms. Uhack through the doctrine of vicarious liability.

For the following reasons, I find the granting of summary judgment inappropriate.

At the outset, I address a procedural issue regarding this court's consideration of the deposition of Anthony Bickley ("Bickley"). Bickley was an asset protection specialist and almost 20-year veteran of Lowe's. Lowe's designated Bickley to testify pursuant to La. C.C.P. Art. 1442.

On March 7, 2024, a day before the summary judgment hearing, Uhack's counsel filed a supplemental opposition to summary judgment with exhibits attached. It included Bickley's deposition.

Counsel for Lowe's argues that the admission of this evidence on the record was not timely filed. La. Code Civ. Proc. art 966(B)(2) states that "any opposition to the motion and all documents in support of the opposition shall be filed ...not less than 15 days prior to a hearing on the motion."

What is lost on this court, is that a review of the summary judgment hearing transcript reveals this supplemental evidence was introduced on the record and Lowe's did not contemporaneously object to its admission[1]. La. Code Evid. art. 103 provides that "error may not be predicated upon a ruling which admits or excludes evidence unless …timely objection appears of record, stating the specific ground of objection." "[T]o preserve an evidentiary issue for appellate review, it is essential that the complaining party enter a contemporaneous objection to the evidence or testimony and state the reasons for the objection." *Danna v. Ritz-Carlton Hotel Co.*, L.L.C., 20-0116 (La. App. 4 Cir. 3/24/21), 365 So. 3d 679, *writ denied*, 21-00714 (La. 10/1/21), 324 So. 3d 1053, and *writ denied*, 21-00713 (La. 10/1/21), 324 So. 3d 1059. I find the evidence is properly before us on *de novo* review.

Lowe's contends Off. Garner was an independent contractor that was employed by PROTOS, a security company. PROTOS was contracted to handle and manage security guard hires for Lowe's. Furthermore, PROTOS was the point of contact and the entity that set out guidelines for each security worker. Lowe's relies on the precedent set out in *Duronslet* to support this contention.

---

[1] It is important to note that defense counsel did not object to the admission of the exhibits until they were also proffered at the motion for a new trial held on April 26, 2024.

*Duronslet* created guidelines to determine if a hired worker is an independent contractor or employee of a principal. There are a number of factors to take into consideration. In part, factor 2 sets out that the contractor employs "non-exclusive means" in accomplishing the work. Factor 3 states that "the contract calls for specific piece work as a unit to be done according to the independent contractor's own methods, without being subject to control and direction of the principal, except as to be the result of services to be rendered." *Duronslet v. Wal-Mart Stores, Inc.*, 22-0019 (La. App. 4 Cir. 7/27/22), 345 So. 3d 1136.

Lowe's provided all Contract Security Personnel ("CSPs") and Contract Law Enforcement ("CLEPs") with a "do's and don'ts" list to review before they began employment. They had to consent to this list by initialing each "rule." Policies included that on patrol, CLEPs could only pursue those suspected of illegal activity, if they personally witnessed the crime in progress. In addition, CLEPs were the "exception" to armed security, but only with "prior approval" of the Lowe's Vice President of Loss, Prevention, Safety and Hazmat. It was prohibited for security workers to fraternize with other store employees and customers while working their shift at Lowe's. Each was required to complete a daily checklist, maintained on file at their assigned store of employment.

Lowe's also required security workers to sign an employment agreement. It stated that "parking lot security will be trained on Lowe's current procedures as well as any changes or updates to these procedures prior to being assigned to a Lowe's store."[2] Lowe's Loss Prevention, Safety and Hazmat also directed patrolling security to act "if they personally witness a crime in progress and contact Law Enforcement for assistance while on duty for Lowe's."

---

[2] This document was executed and signed by Lowe's Staff and Off. Garner.

As an asset protection specialist director for Lowe's, Bickley's duties included providing leadership and guidance in the matters of safety and theft at the locations in his region. Bickley testified that Lowe's "upper-management supervisors" had the authority to determine when and why certain guards were not permitted to return to their assigned stores.

Bickley expounded on the Lowe's guidelines for disengagement in the event of suspected theft. He offered a contrary opinion from Lowe's and PROTOS' Master Service Agreement, that there was no difference between CSPs and CLEPs. His deposition addressed Lowe's internal "Do's and Don'ts" document.

Bickley explained that Lowe's policy was to provide one officer on patrol per shift. The exception to this rule was the Elysian Fields store,[3] the location where the incident occurred. This particular location was a tier 6, the highest risk, with the highest level of complaints, incidents of theft and danger. Lowe's required the Elysian Fields store to be equipped with one guard and one officer, because there was "a lot of apprehension" at this location.

After considering the deposition of Anthony Bickley and his statements about Lowe's policies. I find reasonable minds could disagree as to whether the security services were to be done according to PROTOS' own methods, without being subject to control and direction of Lowe's. Stated differently, I find that a genuine, material issue of fact exists as the whether there was an employee-employer, or principal-independent contractor relationship between Lowe's and Off. Garner.

Based on the foregoing, I would reverse the trial courts granting of summary judgment in Lowe's favor and remand for further proceedings.

---

[3] Store number 2470, Lowe's located at 2501 Elysian Fields Avenue, New Orleans, La.